**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| **DEMARAY LLC,** | |
| Plaintiff, | **Case No. 6:20-cv-00634-ADA** |
| v. | **JURY TRIAL DEMANDED** |
| **INTEL CORPORATION,** | **PUBLIC VERSION** |
| Defendant. | |

## DEMARAY LLC'S OPPOSITION TO INTEL CORPORATION'S MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 3

III.  ARGUMENT ................................................................................................................... 5

      1.    Access To Sources Of Proof Favors This District, Or At Worst Is
          Neutral .................................................................................................................. 5

      2.    The Availability Of Compulsory Process Is Neutral ........................................... 8

      3.    This District Is Equally Or More Convenient For Willing
          Witnesses ............................................................................................................. 9

      4.    Other Practicalities Weigh Heavily Against Intel's Motion .............................. 11

      5.    Court Congestion Within NDCA Strongly Militates Against
          Transfer .............................................................................................................. 13

      6.    Localized Interests Weigh Against Transfer ...................................................... 14

      7.    No Other Public Interest Factors Favor Transfer ............................................... 15

IV.   CONCLUSION .............................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)............................................................................14

*In re Adobe*,
   823 F. App'x 929 (Fed. Cir. July 28, 2020).........................................................14

*Aerielle, Inc. v. Monster Cable Prod., Inc.*,
   No. 2:06-cv-00382-TJW, 2007 WL 951639 (E.D. Tex. Mar. 26, 2007)................11

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip., Inc.*,
   630 F. Supp. 2d 1084 (N.D. Cal. May 20, 2009)............................................3, 15

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
   571 U.S. 49 (2013).................................................................................................5

*Fintiv, Inc. v. Apple Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ...............6, 11

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)........................................................................8, 14

*Hammond Dev. Int'l, Inc. v. Google LLC.*,
   No. 1:20-cv-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020)............12

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)............................................................................14

*Huawei Techs. Co. v. Huang*,
   No. 4:17-cv-00893, 2019 WL 1978339 (E.D. Tex. May 2, 2019) .........................15

*Kuster v. W. Dig. Techs., Inc.*,
   No. 6-20-cv-00563-ADA, 2021 WL 466147 (W.D. Tex. Feb. 9, 2021) ................13

*MV3 Partners LLC v. Roku, Inc.*,
   2019 WL 10981851 .............................................................................................10

*In re Nintendo Co.*,
   544 F. App'x 934 (Fed. Cir. 2013) .........................................................................9

*Opperman v. Path, Inc.*,
   No. A-12-CA-219-SS, 2013 WL 7753577 (W.D. Tex. Jan. 15, 2013) ..................15

**Page(s)**

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
  No. 6:17-cv-00549-JRG, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) ................................14

*Solas OLED Ltd. v. Apple Inc.*,
  No. 6:19-cv-00537-ADA, 2020 WL 3440956 (W.D. Tex. June 23, 2020)..................5, 7, 8, 9

*Uniloc 2017*,
  6:19-cv-00532-ADA, 2020 WL 3415880 (W.D. Tex. June 22, 2020)...................................13

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ........................................................................................5

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................5, 14

*Voxer, Inc. v. Facebook, Inc.*,
  6:20-cv-00011-ADA, 2020 WL 3416012 (W.D. Tex. June 22, 2020)....................................9

*Whitewater W. Indus., Ltd. v. Alleshouse*,
  981 F.3d 1045 (Fed. Cir. 2020)......................................................................................15

*XY, LLC v. Trans Ova Genetics, LC*,
  No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ................................8

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................................2, 5, 12

\* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

\* All exhibits are attached to the Declaration of C. Maclain Wells ("Wells") filed herewith. Also referenced is the Declaration of Brian Marcucci ("Marcucci") also filed herewith.

## I.   __INTRODUCTION__

This case involves Intel's configuration and use of semiconductor fabrication chambers ████████████████, to manufacture semiconductor chips that ████████████████████, and which Intel thereafter ***markets and sells in high volumes in this District***. Contrary to Intel's assertions, it has extensive case-related contacts here, including over 1700 employees at a large Austin campus where it develops the semiconductor products made in the infringing manner. The primary reactor supplier to which Intel points, Applied Materials ("Applied"), similarly has extensive case-related contacts here—███████████████████████████ ████████████████████████████████████. This District is thus not just a legally proper forum for this action—a fact that Intel necessarily concedes—but is the most sensible and convenient forum when the applicable facts are taken into account.

An additional reason this case should remain here is that the case has already progressed significantly before this Court, and Intel has participated extensively in those proceedings. Intel, for instance, has answered the complaint, submitted a case schedule (in which it agreed to *Markman* hearing and trial dates in Waco), participated in discovery hearings, produced core technical documents, commenced the claim construction process, and has demanded and will shortly receive depositions (including about claim construction)—all in this case. In addition, Demaray sued Samsung at the same time as Intel on the same patents (Case No. 6:20-cv-00636-ADA). Like Intel, Samsung has extensive contacts with this district relating to its infringement, including its ***only two domestic semiconductor fabrication plants***, which produce products made in the infringing manner, making transfer of the Samsung case all the more inappropriate. Transferring this case, while keeping the Samsung case, would be grossly inefficient.

Despite its extensive case-related connections to this District and the considerable progress already made here, Intel has decided that it would prefer to litigate this matter

elsewhere—in particular, in a court facing a serious backlog and that is much slower to get to trial before even considering that it typically stays proceedings in favor of IPRs. To that end, after Demaray filed this suit, Intel coordinated with Applied and Samsung to file multiple declaratory judgment (DJ) actions about this suit in the Northern District of California (NDCA) as well as four IPRs against the Demaray patents in suit. Intel's escape plot has little to do with "the convenience of parties and witnesses" or "in the interest of justice" under 28 U.S.C. § 1404(a). Intel's procedural maneuvering is, instead, all part of an extreme attempt at forum shopping designed to delay trial on Intel's infringement of Demaray's patented reactors and manufacturing process, which it uses to make billions of dollars' worth of semiconductor products.

Intel's procedural maneuvering has not stopped there. It also coordinated with Applied and Samsung to request that the NDCA *enjoin this Court from proceeding with the cases against Intel and Samsung*. The NDCA soundly rejected the request and determined that there was *not even subject matter jurisdiction* for the DJ case. Ex. 2 (Order). But even that did not stop Intel, Applied and Samsung. Before the NDCA formally dismissed the third-filed case, Applied filed yet another fourth-filed DJ case on essentially the same theory. The parties in NDCA are now briefing a motion to dismiss that fourth-filed DJ case on the same bases on which the third-filed case was already rejected. Until that issue is resolved (again), the NDCA judge has stayed all substantive action in the fourth-filed DJ case. *See* Ex. 6 (CMC Tr.) at 16–17.

Despite the orders in NDCA, Intel still tries to leverage the NDCA cases here by pointing to "licensing/ownership" affirmative defenses raised by Applied and restated here (*see* Dkt. 22 (Amended Answer) ¶¶ 93, 95, 101, 107), and alleging that a locus of facts relating to those defenses is in NDCA. Intel fails to inform the Court that the NDCA already ruled that the exact Applied assignment provisions (and similar Applied Komatsu provisions) on which that defense

is predicated are unlawful and void as a matter of public policy. *See Applied Materials, Inc. v. Advanced Micro-Fabrication Equip., Inc.*, 630 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009).

In stark contrast to Intel's extensive, case-related ties to this District, Intel makes no alleged use whatsoever of the claimed reactor configurations at its headquarters in NDCA. Given the lack of ties to the far slower forum it prefers, Intel points to contacts between NDCA and Demaray and a subset of the named inventors. But Dr. Demaray is willing to come here and this District is more convenient for the only domestic, true third-party inventor, Dr. Zhang. Marcucci, ¶ 8. Intel also relies on contacts to NDCA of Applied. But, Applied conducts ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

While Intel may not like Demaray's choice of venue, under settled precedent that choice may not be disturbed unless Intel can show that NDCA is clearly more convenient and in the interests of justice. When all the relevant facts are properly considered, this District unassailably emerges as the superior venue. Among other reasons, this District is as convenient a destination for the majority of the non-party witnesses both inside and outside of Texas, has strong interest in resolving Intel's substantial infringing activity here, and considerable progress has already been made in the case here. Intel has not satisfied its burden to show that NDCA would be clearly more convenient and in the interest of justice and its motion should be denied.

## II.      **FACTUAL AND PROCEDURAL BACKGROUND**

Demaray filed suit against both Intel and Samsung on July 14, 2020. Dkt. 1 (Complaint). The asserted Demaray patents relate generally to a method of depositing thin films using a specific PVD reactor configuration. *See id.*, ¶¶ 20, 46. The two Texas cases are being coordinated for pre-trial purposes, Applied is indemnifying to some extent Intel and Samsung

(Ex. 7 at 19), and all three are represented by the same litigation counsel (*see* Dkt. 23 (Joint Case Report)). The cases are proceeding in an orderly fashion with Intel's participation (*e.g.,* Intel has filed substantive motions to compel supplemental infringement contentions, attended hearings on those motions (*see* Dkt. 42) and just agreed to a revised Scheduling Order that the Court entered in which it agreed to a joint *Markman* hearing on April 6, 2021 and December 27, 2021 trial date in Waco (Dkt. 45).

Roughly a month after Demaray brought the Texas cases, Applied brought a third-filed DJ case against Demaray in NDCA on the same patents seeking a declaration of non-infringement and then filed an amended complaint raising licensing/ownership claims. Ex. 1 (Applied First Amended Complaint). Applied then sought the extraordinary remedy of requesting the NDCA judge to enjoin this Court from proceeding with the Intel and Samsung cases. *See* Dkt. 40-19, Ex. S (Applied motion). Applied also filed four IPRs against the Demaray patents, naming Intel and Samsung as interested parties. *See* Dkt. 38 (Notice of IPRs). The NDCA court denied Applied's injunction request on the papers, holding that because the Texas cases concern Intel's and Samsung's infringing activities, "[t]he facts put forth by Applied do not establish that there is a 'substantial controversy' between [Applied and Demaray]." Ex. 2 (Order) at 6. This Court similarly rejected Intel's and Samsung's request to stay the first- and second-filed Texas cases in favor of the third-filed NDCA case. *See* Dkt. 23 at 3–4 (stay request). Applied subsequently voluntarily dismissed the third-filed DJ case. Ex. 3.

Desperate to avoid having a jury in Waco address Intel's and Samsung's infringing behavior, and despite its earlier-failed attempts to enjoin this Court, Applied again tried to initiate disputes with Demaray in NDCA by filing a largely duplicative fourth-filed action in NDCA. Ex. 4 (Complaint). Given the earlier determinations regarding lack of subject matter

jurisdiction, the NDCA court stayed substantive proceedings in the fourth-filed DJ case pending

resolution of Demaray's motion to dismiss. Ex. 6 (CMC Tr.) at 16–17; Ex. 5 (motion to dismiss).

## III.   <u>ARGUMENT</u>

It is well settled that that "plaintiffs are ordinarily allowed to select whatever forum they

consider most advantageous." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,

571 U.S. 49, 63 (2013). To upset this choice, a defendant must "clearly demonstrate" that

statutory requirements support transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th

Cir. 2008) ("*Volskwagen II*"). A plaintiff's forum privilege "places a significant burden on the

movant to show good cause for the transfer." *Id.* at 314, n.10. "[W]hen the transferee venue is

not clearly more convenient … the plaintiff's choice should be respected." *Id.* at 315. Courts

within this circuit assess the eight factors (listed below) in evaluating transfer.[1] *In re Volkswagen*

*AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volskwagen I*"). A district court enjoys "broad

discretion in deciding whether to order a transfer." *Volkswagen II*, 545 F.3d at 311. Intel cannot

meet its heavy burden given its substantial ties to infringing activity in this District, the lack of

inconvenience to witnesses, and the congestion in the proposed transferee forum. *See Solas*

*OLED Ltd. v. Apple Inc.*, 2020 WL 3440956, at *8 (W.D. Tex. June 23, 2020) (denying transfer

where facts did not "merit a finding of clearly more convenient").

### 1.   **Access To Sources Of Proof Favors This District, Or At Worst Is Neutral**

This factor asks where the parties store physical evidence such as documents. *See*

*Volkswagen II*, 545 F.3d at 316. Despite Intel's artfully worded declaration from a witness with

no actual knowledge of the PVD processes at Intel, the facts illustrate that Intel has a 1700

person campus in Austin that ███████████████████████████████

---

[1] The "interest of justice" analysis of § 1404(a) is borne out in these factors. Demaray
accordingly follows the Fifth Circuit's framework despite Intel's attempt to analyze this
consideration independently from the *Volkswagen* factors. *See* Mot. at 15.

███████████████████████████████████████████████. Dkt. 39-2 (Hergott

Dec.) at ¶ 6 (1700 person campus); Exs. 13-16 (Intel location and jobs in Austin); Ex. 8 (Hergott

Dep.), 88:17–20 ██████████████████████████; Dkt. 36-6, Ex. A at 43

(contentions accusing semiconductor products). Intel also markets and sells semiconductor

products made using the infringing methods in Waco and the rest of the Western District. Ex. 12.

Intel submitted a declaration from Mr. Hergott in which he asserts that ██████████

██████████████████████████████████████ Dkt. 39-2 at ¶ 11. But

at deposition, Hergott ██████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████ Ex. 8 (Hergott Dep.), 8:1–

5. Intel's one-sided spoon-feeding of information to a witness with no relevant personal

knowledge cannot support transfer. *See Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678, at *2 (W.D.

Tex. Sept. 13, 2019) ("A court may consider undisputed facts outside the pleadings, but *it must*

*draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving*

*party*."). For example, ████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████ Ex. 8 (Hergott Dep.), 88:17–89:7, 105:11–20, 106:12–107:4; *see also id.*, 37:21–

39:1 ██████; 92:11–24 ███████; 95:3–96:3 ██████.

It is also undisputed that ██████████████████████████████

██████████████████████████████████████████████

█████████████████"[2] Ex. 9 (Miller Dep.), 15:13–16:10, 37:4–11 ████████████

---

[2] Applied asserts ██████████████████████████████████████

███████████████████████████████████ *Id.*, 20:18-23:2.

██████████████████████████████, Ex. 17 (2400 employees in Austin). Intel argues that

"Applied … **manufactures**, configures, and installs its Endura systems for Intel …. [and that]

Applied evidence will … be critical to this action and the location of that evidence of utmost

importance." Mot. at 10. ███████████████████████████████████████████████

███████ Although the full scope of Intel's infringement is not yet clear, Demaray has

established that substantial sources of proof are in this District.

Remaining relevant materials are spread across the country and easily accessible

electronically from this District.[3] Intel points to its NDCA headquarters as supporting transfer

(Mot. at 3), but admits that there are no ████████████████████████████████

████████████████████████████████████ Ex. 8 (Hergott Dep.), 82:10-13, 82:24-

83:3. Instead, ████████████████████████████████████████ *Id.,* 56:5-

20. Hergott confirmed that ███████████████████████████████████████

████████████████ *Id.*, 53:24-54:12 ████████████████████, 59:18-61:5 (███████████

████████; Ex. 10 (12/18/20 Rog Resp.) at 7 █████████████████████████. For example,

██████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 8 (Hergott Dep.), 53:19-23. Hergott also

confirmed ███████████████████████████████████████████████

████████████. *Id.,* 44:15-46:1, 63:5-25, 74:15-23.

Intel's reliance on alleged Applied PVD reactor R&D work in NDCA is misplaced. *See*

Mot. at 10. First, the notion that Applied, and thus NDCA, will be the predominant locus of

evidence is in conflict with Demaray's pleadings. Demaray has not alleged that Applied's

---

[3] The Court has correctly observed that this factor, by focusing on the location of physical documents, "conflicts with the realities of modern patent litigation." *See Solas OLED*, 2020 WL 3440956, at *3 n.1.

reactors standing alone infringe or that they are the only reactors that Intel uses to infringe. *See, e.g.*, Dkt. 1, ¶ 25 ("***Intel configures RMS reactors, including, but not limited to*** reactors in the Endura product line from Applied Materials …."). Indeed, ███████████████████████████████

███████████. Ex. 8 (Hergott Dep.), 109:6-11 ██████████████████, 112:9-25; Ex. 10 (12/18/20 Rog Resp.) at 6. █████████████████████████████████████████

Applied also acknowledged ████████████████████████████████████████

█████████████████████████████████. Ex. 9 (Miller Dep.), 134:13-20 █████████

████████████████████████████████████████████████████.

Contrary to Intel's assertion, Demaray's headquarters in NDCA does not favor transfer. *See* Mot at 11. The bulk of the evidence in this case will reside with the accused infringer, Intel. *Solas*, 2020 WL 3440956, at *3 ("As Apple is the accused infringer, Apple likely possesses the bulk of the relevant documents for this case …."). And, like Intel and Applied, Demaray maintains its documents electronically (*e.g.,* Google Cloud) and those documents are equally accessible at locations across the country. Marcucci, ¶ 9 (the person at Demaray involved with PVD with the most complete set of materials, Brian Marcucci, is located in Phoenix, Arizona).[4]

## 2.    The Availability Of Compulsory Process Is Neutral

If called for trial, Dr. Demaray has agreed to appear in this District. Marcucci, ¶ 8. While Intel points to Applied witnesses as being beyond the subpoena power of the Court (Mot. at 12),

---

[4] Intel's case law does not lead to a different conclusion. *See* Mot. at 10. The court in *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017) agreed that "[t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." Because "infringing activities [were] located at … Texas facility, including documents and the infringing sperm sorting equipment that XY intends to inspect as part of this case," the factor actually weighed toward retention. *Id. In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) involved a district court's speculation that "although the petitioners identified all of its evidence in California, there could be evidence in existence in some other offices around the country." Here, established venue facts confirm that sources of proof are in this District.

the Applied personnel in Austin ███████████████████████████ are subject to the

Court's subpoena power (the Applied Austin facility is within 100 miles of the Waco

courthouse) and would not be subject to compulsory process in NDCA. In addition, Applied has

appeared voluntarily in this action on behalf of Intel (*see* Dkt. 39-3), has some indemnity

obligations to Intel (Ex. 7 at 19), and has been coordinating Intel's and Samsung's litigation

strategy (*see* Dkt. 23). The evidence indicates that Applied witnesses will voluntarily appear. *See*

Mot. at 4 (identifying Applied employees Keith Miller and John Forster as "anticipated witnesses

at trial"). *See Solas*, 2020 WL 3440956, at *5 ("[T]he submission of the witnesses by Samsung

signals a willingness to testify … As such, a willing witness nullifies the need for compulsory

process."); *see also Voxer, Inc. v. Facebook, Inc.*, 2020 WL 3416012, at *4 (W.D. Tex. June 22,

2020) (factor does not favor transfer when defendants "lack [] evidence that its third-party

witnesses would be unwilling to travel.").[5]

### 3.    This District Is Equally Or More Convenient For Willing Witnesses

As discussed above, Intel product design personnel and Applied manufacturing personnel

involved with Intel's accused use of the claimed reactor configurations are located in this

District. In addition, Intel ██████████████████████████████████████████████

████████████████████████ (Ex. 8 (Hergott Dep.), 56:5-20)—locations all with easy

access to this District. Wells, ¶ 19. While Intel and Applied have sought to downplay these

activities, personnel at these locations likely have relevant information relating to Intel's actual

use (and thus infringement) of the claimed reactor configurations. As one example, a search for

---

[5] Intel's assertion that it is a mere retailer of Applied reactors (*see* Mot at 11 (citing *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) for the proposition that "retailers will have very little to offer in the way of evidence")) is wrong. It is undisputed that Intel does not sell reactors and Intel is accused of using the claimed reactor configurations in the production of its semiconductor products. *See* Dkt. 1 ¶ 25.

patents relating to PVD technology assigned to Applied or Intel and mentioning Austin turned up

over 130 patents. Wells, ¶ 21, Exs. 19–20 (example patents relating to semiconductor

manufacturing processes). Further, both Intel and Applied have acknowledged the convenience

of this District by filing infringement actions here, including cases on PVD reactors. Exs. 21-22.

Demaray anticipates that the most important non-party testimony will be from inventors.

Dr. Demaray has committed to attending trial (Marcucci, ¶ 8) and there is no indication that Dr.

Zhang or Dr. Mullapudi (who was until recently an Applied employee (*see* Mot. at 8)), will not

attend. Of these witnesses, Dr. Demaray will tell the story of inventorship, including how he

conceived and reduced to practice the claimed invention. *See* Marcucci, ¶ 8. Dr. Zhang, the only

true non-party, domestic inventor whose specific testimony the parties have identified as likely

and relevant, lives in Boston and is thus closer to Waco than NDCA, making the cost of

attendance factor with regards to Dr. Zhang weigh against transfer.

Intel reliance on Intel personnel in NDCA (licensing and financial witnesses) and Oregon

(engineers) (Mot. at 8) as well as persons associated with Demaray (*id.* at 3) as supporting

transfer is misplaced—"the convenience of party witnesses is given little weight." *See MV3*

*Partners LLC v. Roku, Inc.*, 2019 WL 10981851, at *3 (W.D. Tex. June 25, 2019). Moreover,

Intel fails to identify "specific witnesses, outline the substance of their testimony, [or to] provide

more than general allegations" to support its assertion. *See id.* at *4. For example, Intel points to

random people "identified on Demaray's website" including "William Krupke, Board Member

… Aubert Demaray, Operations and Financial Officer … and Adam Lambert, Advanced

Research" (Mot. at 3), but offers no reason why testimony would be required from these

individuals at trial. With regard to alleged Applied witnesses, as discussed above, Applied has

likely witnesses in this District and is a third party to this litigation in name only. Any Applied

witnesses should be considered willing party witnesses who should not heavily implicate this factor. In addition, Demaray's allegations extend beyond reactors furnished by Applied ██ ████████ and related witnesses are likely located outside of NDCA. *See* Wells, ¶ 20.

Intel also says nothing about whether its laundry list of Intel/Demaray/Applied witnesses will feasibly testify live given the time constraints of trial. *Fintiv*, 2019 WL 4743678, at *6 ("the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial … Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor."). The concern is elevated here because the realities of patent trials in this Court make it extremely unlikely that all these witnesses would testify. *Aerielle, Inc. v. Monster Cable Prod., Inc.*, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007) ("This Court … must also be mindful that many patent infringement cases are driven by expert testimony."). For example, Applied's or Intel's engineers may very well be deposed during this litigation (indeed, an Applied engineer, Mr. Miller, has already been deposed once) rendering their attendance at trial unnecessary. As another example, Intel identifies at least three witnesses regarding the licensing history of the Demaray patents (*see* Mot. at 8), but does not explain why anyone other than Dr. Demaray himself would be needed. At a minimum, Intel fails to describe any specific testimony for the three witnesses for the Court to find relevant venue facts.

### 4. Other Practicalities Weigh Heavily Against Intel's Motion

When it sued Intel, Demaray also filed suit at the same time on the same patents against Samsung in co-pending Case No. 6:20-cv-00636-ADA. Like Intel, Samsung has extensive contacts with this district relating to its infringement, including its ***only two domestic semiconductor fabrication plants***, which produce products using the claimed reactor configurations, making transfer in the Samsung case all the more inappropriate. Transferring this case, while keeping the Samsung case, would be grossly inefficient: "[t]o permit a situation in

which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Hammond Dev. Int'l, Inc. v. Google LLC.*, 2020 WL 3452987, at *4 (W.D. Tex. June 24, 2020). Indeed, the Court and parties have realized built-in efficiencies by having both the Samsung and Intel cases here. *See id.* at *5 (efficiency for joint filings).

In addition, Intel has already availed itself of the Court's resources. Intel has filed substantive motions to compel supplemental infringement contentions in this District, attended hearings on those motions (Dkt. 42), and just submitted a revised Scheduling Order in which it agreed to a joint *Markman* hearing for both cases on April 6, 2021 and trials beginning December 27, 2021 in Waco (Dkt. 45). Thus, even at this stage of the proceedings, the Court has already invested meaningful time in the coordinated cases, and these cases have progressed to the point where they are now only about 10 months from trial.

Intel's argument that "transfer would not cause delays" (Mot at 13) could not be further from the truth. Applied has filed four IPRs on behalf of Intel and Samsung. Dkt. 38. It appears that defendants are seeking to transfer this case to a court where it would be given a ***far slower*** case schedule, which it would then ***halt for years*** by seeking a stay pending the IPRs.[6]

The Court should reject Intel's efforts to manufacture ties to NDCA based upon Applied's rejected request to enjoin this Court or Applied's now dismissed third-filed DJ action. *See* Mot. at 1, 3, 12–15. As discussed above, the NDCA court denied Applied's baseless injunction request on the papers. Ex. 2 (Order) at 6. Contrary to Intel's assertion that "Applied's DJ Action in NDCA currently pending before Judge Davila will be dispositive of most—if not

---

[6] Since 2016, NDCA has granted motions to stay cases pending IPR roughly 70% of the time. Ex. 11 (NDCA LegalMetric) at 94. Transferring this case thus has the real potential to delay this case for years.

all—issues in this case" (Mot. at 13), Applied voluntarily dismissed that action after the NDCA

judge found subject matter jurisdiction to be lacking. Ex. 3. There is no reason to believe that

Applied's new fourth-filed case will fare any better as the California court has stayed substantive

proceedings pending resolution of Demaray's filed motion to dismiss (*see* Ex. 6 at 16–17; *see*

*also* Ex. 5 (motion to dismiss)) and there is no case schedule. *See Uniloc 2017 LLC v. Apple Inc.*,

2020 WL 3415880, at *14 (W.D. Tex. June 22, 2020) ("the lack of set trial dates and the number

of stayed cases indicate that keeping the case in WDTX would have a more positive impact.").

Moreover, Applied's fourth-filed DJ case cannot logically be used for transfer—if anything, the

NDCA case should be transferred to this Court.

###### 5.      Court Congestion Within NDCA Strongly Militates Against Transfer

While arguing that "transfer would not cause delays" at one point (Mot at 13), two pages

later Intel concedes that this might not be correct through the understatement of the year: "the

time to trial in NDCA may be longer than in WDTX." Mot. at 15. This Court is familiar with the

pertinent facts. For patent cases since 2016, the average time to trial in NDCA was 34.1 months.

Ex. 11 (NDCA LegalMetric) at 49–50; *Kuster v. W. Dig. Techs., Inc.*, 2021 WL 466147, at *8

(W.D. Tex. Feb. 9, 2021) (noting NDCA congestion and "the lost time that would additionally

accrue by transferring this case and establishing a new schedule with a new presiding judge"

weighed factor against transfer). And that is before even considering the stays pending IPR that

Intel would seek in NDCA. 34 months is *more than three times longer* than the approximately

10 months to trial that remain in the schedule already entered in this case. With stays pending

IPR decisions and related appeals, the NDCA schedule could easily balloon to *six or more times*

*longer* than the existing schedule in this case. Intel takes no issue with this Court's schedule (*see*

Mot. at 15) and, quite the contrary, just submitted a scheduling order that endorses the December

27, 2021 trial date in Waco.[7] Dkt. 45.

### 6. Localized Interests Weigh Against Transfer

As discussed above, Intel markets and sells products produced using the claimed reactor configurations in Waco (Ex. 12), designs such products at its Austin campus and Applied manufacturing of PVD chambers occurs in this District. Given these ties, this District is "the community with the greater connection to the litigation."[8] *See* Mot. at 13 (community with the greater connection to the litigation should host trial); *see also Volkswagen II*, 545 F.3d at 318 (focusing on factor as it relates to "connections with the events that gave rise to this suit").[9]

Intel again points to Applied's design and development of its reactors in California. Mot. at 13–14. Whether Applied designs and develops reactors in NDCA should not change the analysis. It is Intel's infringement that matters here, Demaray's contentions are not limited to Applied reactors, and Applied has a substantial presence in both districts. *Cf. Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, 2018 WL 4444097, at *8 (E.D. Tex. Sept. 5, 2018) ("Amazon does not dispute that it has facilities in this District … [and] affords itself of the laws and protections provided by this District."). Contrary to Intel's assertions, Demaray's location is

---

[7] Intel's reliance on *Genentech, Inc.*, 566 F.3d at 1347 and *In re Adobe*, 823 F. App'x 929, 932 (Fed. Cir. July 28, 2020) for the proposition that "the speed of the transferee district court should not alone outweigh … other factors" (Mot. at 15) is misplaced. At the very least, Intel sells relevant semiconductor products in Waco, ████████████████████████████████████████████████████████.

[8] Intel cites *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009), where the only connection to Texas was that counsel "converted into electronic format 75,000 pages of documents demonstrating conception and reduction to practice and transferred them to the offices of its litigation counsel in Texas." Similarly, the only connection to Texas in *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), was from a single petitioner out of 12 located 300 miles outside the district. Here, however, both Intel and Applied have substantial case-related presences within this District.

[9] Intel touts that it "sells at least some units of the accused processors … in NDCA." Mot. at 4. Intel processors are also sold in Waco. Ex. 8 (Hergott Dep.), 77:24-78:14, 107:19-108:2, 79:4-7; Ex. 12 (available at Best Buy).

also of little impact: "a party's presence in the transferor district has no or minimal relevance to the case, then that presence does not substantially affect the analysis." *See* Mot. at 14.

### 7.    No Other Public Interest Factors Favor Transfer

The forum's familiarity with the law governing the case and the avoidance of conflicts are not implicated here. The Court should reject Intel's efforts to manufacture ties to NDCA using frivolous license/ownership defenses. *See* Mot. at 1, 5, 10-14. Intel relies on Applied employee assignment provisions with Demaray inventors that have been found to be "unlawful non-compete provisions" that are void as a matter of public policy under California law. *See Advanced Micro-Fabrication Equip*, 630 F. Supp. 2d at 1090; *see also* Ex. 5 (Motion to dismiss) at 17–20. The Federal Circuit and other Fifth Circuit district courts have cited the *Advanced Micro-Fabrication Equip.* opinion with approval. *See Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1057–59 (Fed. Cir. 2020) (citing prior decision and rejecting reliance on California Labor Code § 2870 (offered by Intel (Mot. at 13)) as a basis for avoiding the California court's prior holding); *Huawei Techs. Co. v. Huang*, 2019 WL 1978339, at *9 (E.D. Tex. May 2, 2019) (applying California law to void similar inventor assignment provision).[10]

## IV.    CONCLUSION

On balance the factors strongly weigh against transfer, and certainly don't show NDCA is clearly more convenient. For these reasons, the Court should deny Intel's motion.

---

[10] This case is different from Intel's cited case *Opperman v. Path, Inc.*, 2013 WL 7753577, at *4 (W.D. Tex. Jan. 15, 2013), which dealt with venue analysis of a proposed class action premised solely on California law. Here, Intel's meritless defense is a sideshow to Demaray's patent-infringement claims that will drive the bulk of this litigation.

Dated:  February 23, 2021

By: /s/ Richard D. Milvenan
    Richard D. Milvenan

Richard D. Milvenan
State Bar No. 14171800
Travis C. Barton
State Bar No. 00790276
**MCGINNIS LOCHRIDGE LLP**
600 Congress Ave., Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6005
Facsimile: (512) 505-6305
rmilvenan@mcginnislaw.com
tcbarton@mcginnislaw.com

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach (*pro hac vice*)
Annita Zhong (*pro hac vice*)
C. Maclain Wells (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
azhong@irell.com
mwells@irell.com

Darish Huynh (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
dhuynh@irell.com
*Attorneys for Demaray LLC*

DEMARAY'S OPPOSITION TO INTEL'S MOTION TO
TRANSFER VENUE
(Case No. 6:20-cv-00634-ADA)

**<u>CERTIFICATE OF SERVICE</u>**

A true and correct copy of the foregoing instrument and its attachments were served electronically via email upon all counsel of record on this 23rd day of February, 2021.

By: <u>*/s/ Richard D. Milvenan*                    </u>
     Richard D. Milvenan