IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **DEMARAY LLC,** <br> *Plaintiff,* <br><br> v. <br><br> **INTEL CORPORATION,** <br> *Defendant.* | § <br> § <br> § <br> §     6-20-CV-00634-ADA <br> § <br> § <br> § <br> § |

## ORDER DENYING MOTION TO TRANSFER VENUE

Before the Court is Defendant Intel Corporation's ("Intel") Motion to Transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a). ECF No. 39. After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Intel's Motion to Transfer.

### I.  BACKGROUND

Plaintiff Demaray LLC ("Demaray") filed this lawsuit on July 14, 2020, alleging that Intel infringes U.S. Patent Nos. 7,544,276 and 7,381,657 (the "Asserted Patents") by "configure[ing] RMS [reactive magnetron sputtering] reactors, including, but not limited to reactors in the Endura product line from [third-party] Applied Materials, Inc. ("Applied Materials") for deposition of layers . . . in its semiconductor products." ECF No. 1 at ¶ 25. On the same day, Demaray filed another lawsuit in this Court against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC (collectively "Samsung") for infringing the same Asserted Patents by configuring the same reactors from Applied. *Demaray LLC v. Samsung Electronics Co., Ltd.*, Case No. 6-20-cv-636-ADA, ECF No. 1 at ¶ 28. After filing an Answer to Demaray's complaint (ECF No. 19) on

1

September 21, 2020, Intel filed this Motion to Transfer venue under 28 USC § 1404(a), requesting that this case be transferred to the Northern District of California ("NDCA"). ECF No. 39.

Demaray is a Delaware limited liability company incorporated in Delaware and based in Silicon Valley. ECF No. 1 at ¶ 4. Intel is incorporated in Delaware and headquartered in Santa Clara, California (in the NDCA). ECF No. 1 at ¶ 6; No. 39 at 3. Intel also has a 1700-person campus in Austin, Texas (in this District) that designs semiconductor products. ECF No. 50 at 5. Third-party Applied has its principal place of business in Santa Clara, California, and also has a large manufacturing facility in Austin, Texas. *Id*. at 6.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under [Section] 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358

F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *Burbank International, Ltd. v. Glf Consol. International, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977).

      The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.   ANALYSIS

      The threshold determination in the Section 1404 analysis is whether this case could initially have been brought in the destination venue — the Northern District of California. Neither party

contests the fact that venue is proper in the NDCA and that this case could have been brought there. Thus, the Court proceeds with its analysis of the private and public interest factors.

### A.     The Private Interest Factors Weigh Against Transfer.

#### *i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases

acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

Intel argues that documents from third-party Applied will be critical to this action since Demaray alleged Intel's configuration of Applied RMS reactors infringes the Asserted Patents, and that the Applied documents relevant to this accused technology are in NDCA. ECF No. 39 at 10-11. It contends that "certain Applied documents would not be accessible by Austin employees," and that Applied's physical equipment and documentation are located in NDCA. ECF No. 71 at 3-4. However, Demaray notes that Applied's Austin employees could access any electronically-stored documents; they simply need permission to remotely access those materials. ECF No. 74-1 at 1. Further, testimony shows that Applied's Austin facility is responsible for the volume manufacturing of all of its commercial PVD chambers. *Id.* at 1-2; ECF No. 50 at 3. Therefore, the required Applied documents for manufacturing are necessarily provided to its Austin employees.

Both sides have discussed that electronic documents are "equally accessible" in either jurisdiction and that focusing on the location of physical documents "conflicts with the realities of modern patent litigation." ECF No. 50 at 7; ECF No. 71 at 4. Demaray notes that most of the relevant documents for this case are electronically stored and readily accessible from this District. ECF No. 50 at 3. Intel cannot point to any of their own documents that cannot be accessed or even would be difficult to access in this District. As such, the Court is not persuaded by Intel's argument sources of proof are easier to access in the NDCA. *See Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *3–5 (E.D. Tex. Sept. 23, 2014) (weight of the evidence presented by Google for this factor did not meet its burden where Google did not provide

"evidence that these documents are *more* available or accessible from the Northern District of California than they would be from [] Texas" (emphasis added)).

Therefore, the Court finds this factor neutral.

### *ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

In this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc,* 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue*.*" *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp*., No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted). The inconvenience of foreign witnesses, who will have to travel a substantial distance to be present at any U.S. court, is weighted less heavily than that of domestic witnesses. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D. N.Y. 2006) (traveling from the United Kingdom to New York was only marginally more convenient than traveling to Tennessee)); *Bionx*

6

*Implants, Inc. v. Biomet, Inc.*, 1999 U.S. Dist. LEXIS 8031 at 3 (traveling from Finland to Indiana was not more inconvenient than traveling to New York)).

Intel asserts that Applied engineers and employees, who are not parties to this lawsuit, will be "critical" to this case, and that they within the subpoena power of NDCA but outside of this Court's subpoena power. ECF No. 39 at 12. However, Intel does not deny that Applied has indemnity obligations to Intel and Applied has been coordinating with Samsung and Intel on litigation strategies, including filing multiple declaratory judgment ("DJ") actions against Demaray in NDCA and *inter parte* review ("IPR") petitions regarding the Asserted Patents before the Patent Trial and Appeal Board ("PTAB"). ECF No. 89 at 5; No. 50 at 4. Further, Intel has not shown that any of the mentioned Applied witnesses are unwilling to attend trial. Indeed, Mr. Keith Miller, a Director of Engineering at Applied, has voluntarily provided a declaration in support of Intel's Motion to Transfer. ECF No. 39, Ex. 3. Also, Applied's employees at their Austin PVD manufacturing facility *are* within this Court's subpoena power, and Intel has not provided persuasive reason why those Austin employees cannot provide adequate testimony at trial.

Intel also identifies Dr. Ravi Mullapudi, one of the inventors who resides in NDCA, as a potential third-party witness. Intel further identifies a list of other potential third-party witnesses in NDCA, including a number of former Applied and/or Applied Komatstu ("AKT") employees who are likely witnesses to Intel's license defense based on a sales and relationship agreement ("SRA"), as well as other former Symmorphix employees with potential knowledge of Intel's defenses. ECF No. 39 at 12. Although Dr. Mullapudi's testimony may be useful at trial, Intel does not provide persuasive arguments for why former Applied and/or AKT employees or former Symmorphix employees would be necessary at trial. Indeed, Demaray points out that some of the

7

key figures involved in the SRA are outside of NDCA, including those who live in North Carolina, New York, and South Carolina. ECF No. 89 at 2-3.

In view of the above, the Court finds this factor is neutral.

### iii. The Cost of Attendance for Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6. "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Am. Inc.*, 2021 U.S. Dist. LEXIS 47242 at *19 (W.D. Tex. Feb. 2, 2021); *see Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. Jul. 2, 2020).

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in Section 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.*

The parties identify three categories of potential willing witnesses: those from Applied, those from Intel, and the inventors of the Asserted Patents. Intel contends that witnesses from Applied are crucial since the alleged infringement involves use of Applied technology and identifies a list of Applied individuals located in NDCA. ECF No. 39 at 7-8. Intel further contends that "the Applied and Intel employees with the most relevant or material information, and who likely will be called to testify at trial, are not in [the Western] district [of Texas]." *Id.* at 9. However, Demaray points out that Applied's Austin manufacturing personnel are involved with Intel's accused use of the claimed reactor configurations. ECF No. 50 at 9-10. Intel also relies on its own

engineers as potential witnesses to support its argument for transfer. *See* ECF No. 39 at 8-9. However, the "convenience of party witnesses is given little weight." *SynKloud Techs., LLC v. Dropbox, Inc.*, Case No. 6:19-cv-00525-ADA, 2020 WL 2494574, at *4 (W.D. Tex. May 14, 2020).

Finally, the parties do not dispute that there are four named inventors: Dr. Demaray and Dr. Ravi Mullapudi, who both live in NDCA; Dr. Hongmei Zhang, who lives in Boston; and Mr. Mukundan Narasimhan, who lives in India. ECF No. 39 at 3. Dr. Demaray is a willing witness who has committed to attend trial. ECF No. 50 at 10. Dr. Mullapudi and Zhang might attend the trial, but there is no indication that Mr. Narasimhan is willing to testify or that he would attend the trial. In the event that Dr. Zhang attends the trial, he lives in Boston and is thus closer to this District than NDCA. *Id*.

Therefore, the Court finds that this factor is also neutral.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S. D. Tex. 1973).

On the same day Demaray filed this action against Intel, it also filed another lawsuit against Samsung in this Court (*Demaray LLC. v. Samsung Electronics Co., Ltd.*, Case No. 6-20-cv-636-

9

ADA), which involves the same patents and the same Applied technology. These two cases have been coordinated together in all pretrial proceedings before this Court. The parties do not dispute that transferring this case, while keeping the Intel case, would be grossly inefficient. *SynKloud* at *5 ("[J]udicial economy favors having the infringement of the same patent considered by one judge.").

Further, Applied has filed four IPRs on behalf of Intel and Samsung to challenge the Asserted Patents before the PTAB. The parties do not dispute that if this case is transferred to NDCA, it will likely be stayed pending the IPRs, and the stay would delay the trial for this case for years. ECF No. 50 at 12.

Intel argues that judicial economy favors transfer to NDCA because Applied's DJ action is currently pending in NDCA. ECF No. 39 at 12-13. However, Applied's DJ action was filed after Demaray filed its actions against Intel and Samsung in this Court. *Id*. at 13. A defendant (or a third-party coordinating with the defendant) cannot manufacture "convenience" by simply filing a DJ action at its desired venue after the plaintiff filed a complaint at its venue of choice and seeking transfer of venue based on the later-filed DJ action.

Because parallel litigation concerning the same asserted patents and the same technology is pending in this District, the Court finds that this factor strongly weighs against transfer.

### B. The Public Interest Factors Weigh Against Transfer.

#### *i. Administrative Difficulties Flowing From Court Congestion*

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). A faster average time to trial means more efficient and economical resolutions of the claims at issue.

10

Demaray points out, and Intel does not dispute, that for patent cases since 2016, the average time to trail in NDCA was 34.1 months – three times longer than the time to trial that remains in this case's schedule. ECF No. 50 at 13. If this case is transferred to NDCA and is stayed pending resolution of the IPRs, the time to trial for this case would be even longer. Further, this forecast has not taken into account the trial backlog in NDCA caused by courthouse closures due to the Covid-19 pandemic beginning in March 2020. While the parties have provided no evidence that courthouses in NDCA are fully open for jury trials, this Court is experienced and fully capable of conducting jury trials in the Covid-19 pandemic. Since the Covid-19 pandemic began in March 2020, this Court has conducted at least seven jury trials, six of which are patent jury trials. In the first half of 2021 alone, this Court has already conducted five patent jury trials in the Waco courthouse.

The best Intel can do is point to the Federal Circuit's ruling that this factor is not dispositive. ECF No. 39 at 15. However, no one factor is dispositive, as discussed above. *Action Indus.*, 358 F.3d at 340. Considering the relative court congestion in NDCA, the Court finds that this factor weighs strongly against transfer.

### *ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015).

Here, Demaray is a Delaware company based in NDCA. ECF No. 1, ¶ 4. Intel has a campus in Austin, but its domestic fabs are located elsewhere. ECF No. 39 at 4. As Demaray notes, Intel maintains a substantial presence in Austin and Applied conducts its PVD manufacturing in this

11

District. ECF No. 50 at 14. While Intel argues that Applied designs and develops the involved reactors in NDCA, Applied is an unnamed third-party and it is Intel's alleged infringing use of the reactors that is at the core of this action. Given the locations of the parties and third-parties, the Court finds that this factor is neutral.

### *iii. Familiarity of the Forum With the Law That will Govern the Case*

Intel argues that California law will govern Intel's license and ownership defenses because its contract with Applied was executed in California. ECF No. 39 at 14. However, Demaray points out that there is clear case precedent that would guide this Court in deciding Intel's defenses. ECF No. 50 at 15. Further, this Court is confident that the thorough briefing and arguments that will be presented by the very competent counsel on both sides would assist the Court to understand the relevant law and rule on the issue correctly. The Court accordingly finds this factor neutral.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. ECF No. 39 at 14, n.3; ECF No. 50 at 15. The Court also agrees.

## IV.     CONCLUSION

Having considered the Section 1404(a) factors, the Court finds that Intel has not met its significant burden to demonstrate that the NDCA is "clearly more convenient" than this District. Therefore, the Court **DENIES** Intel's Motion to Transfer.

SIGNED this 1st day of July, 2021.

**ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**